Keith J. Miller (kmiller@rwmlegal.com)
Michael J. Gesualdo (mgesualdo@rwmlegal.com)
Justin T. Quinn (jquinn@rwmlegal.com)
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
(973) 690-5400

Mark A. Baghdassarian (*admitted pro hac vice*)
Aaron M. Frankel (*admitted pro hac vice*)
Eileen M. Patt (*admitted pro hac vice*)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
mbaghdassarian@kramerlevin.com
afrankel@kramerlevin.com
epatt@kramerlevin.com

*Attorneys for Defendants Sirius XM Holdings Inc.,*
*Sirius XM Radio Inc., and James E. Meyer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY PARRELLA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM HOLDINGS INC. d/b/a SIRIUS XM SATELLITE RADIO; SIRIUS XM RADIO INC.; and JAMES E. MEYER,<br><br>Defendants. | Civil Action No.: 3:19-cv-15778-AET-ZNQ<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT**<br><br>**Oral Argument Requested**<br><br>Motion Date: October 7, 2019 |

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 1

    I.    Sirius XM Provided Plaintiff with Customer Agreements in
          Connection with His Satellite Radio Subscriptions .......................................................... 3

    II.   Plaintiff's Claims are Governed by the Sirius XM Customer Agreement........................ 4

    III.  The Customer Agreement Contains a Broad Arbitration Clause....................................... 6

    IV.  Plaintiff Did Not Dispute the Customer Agreement, and
          Continued to Use Sirius XM's Service ............................................................................. 8

ARGUMENT ............................................................................................................................. 10

    I.    The Customer Agreement Unequivocally Delegates the Gateway Issues
          of Arbitrability to the Arbitrator .................................................................................... 11

    II.   The Gateway Issues Have Been Satisfied....................................................................... 13

        A.  There is a Valid Agreement to Arbitrate ................................................................. 13

        B.  Plaintiff's Claims Fall Within the Scope of the Arbitration Clause ......................... 17

    III.  Plaintiff's Class Claims Cannot Proceed ....................................................................... 18

CONCLUSION.......................................................................................................................... 20

KL3 3266566.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013)...........................................................................19

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)...................................................................10, 19

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)...........................................................................10

*Beture v. Samsung Elec. Am., Inc.*,
   2018 WL 4259845 (D.N.J. July 18, 2018) ............................12, 15, 16

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991)...........................................................................13

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003).............................................................................10

*Cunningham v. Citigroup, Inc.*,
   2005 WL 3454312 (D.N.J. Dec. 16, 2005)........................................18

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)...........................................................................11

*George v. Midland Funding, LLC*,
   2019 WL 2591163 (D.N.J. June 25, 2019)........................................18

*Goffe v. Foulke Mgmt. Corp.*,
   238 N.J. 191 (2019) ...........................................................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S.Ct. 524 (2019)..........................................................................11

*Hill v. Gateway 2000, Inc.*,
   105 F. 3d 1147 (7th Cir. 1997) .........................................................14

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002).............................................................................12

KL3 3266566.1

*Johnson v. Sally Beauty Supply, LLC*,
 2016 WL 4771062 (D.N.J. Sept. 12, 2016) ........................................................ 17

**Page(s)**

*Kowalski v. YellowPages.com, LLC*,
 2010 WL 3323749 (D.N.J. Aug. 18, 2010) ........................................................ 13

*Levin v. Alms & Assocs., Inc.*,
 634 F.3d 260 (4th Cir. 2011) .......................................................................... 18

*Litman v. Cellco P'ship*,
 655 F.3d 225 (3d Cir. 2011) ........................................................................... 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ......................................................................................... 17

*Nascimento v. Anheuser-Busch Cos.*,
 2016 WL 4472955 (D.N.J. Aug. 24, 2016) ........................................................ 17

*Opalinski v. Robert Half Int'l Inc.*,
 761 F.3d 326 (3d Cir. 2014) ........................................................................... 18

*Raynor v. Verizon Wireless (VAW), LLC*,
 2016 WL 1626020 (D.N.J. Apr. 25, 2016) .......................................................... 2

*Schwartz v. Comcast Corp.*,
 256 F. App'x 515 (3d. Cir. 2007) ................................................................ 14, 15

*Sherr v. Dell, Inc.*,
 2006 WL 2109436 (S.D.N.Y. July 27, 2006) ...................................................... 14

*Tantillo v. CitiFinancial Retail Services, Inc.*,
 2013 WL 622147 (D.N.J. Feb. 19, 2013) .......................................................... 15

*Trippe Mfg. Co. v. Niles Audio Corp.*,
 401 F.3d 529 (3d Cir. 2005) ........................................................................... 10

*Williams v. MetroPCS Wireless, Inc.*,
 2010 WL 1645099 (S.D. Fla. Apr. 21, 2010) ...................................................... 14

*Wright v. Sirius XM Radio Inc.*,
 2017 WL 4676580 (C.D. Cal. Jun. 1, 2017) ....................................................... 13

KL3 3266566.1

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*......................................................1, 10

Defendants Sirius XM Holdings Inc., Sirius XM Radio Inc. and James E. Meyer (together, "Sirius XM" or "Defendants") respectfully submit this memorandum of law in support of their motion to compel arbitration of and dismiss the claims alleged in the Complaint (Dkt. No. 1-1) ("Compl.") filed by Plaintiff Jeffrey Parrella ("Parrella" or "Plaintiff") under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and Fed. R. Civ. P. 12(b)(1).

## PRELIMINARY STATEMENT

This putative class action relates to one of Plaintiff's subscriptions for satellite radio services provided by Sirius XM. Plaintiff is barred from litigating this action in court because the Customer Agreement that governs his relationship with Sirius XM requires that his claims be resolved through binding arbitration on an individual basis.

## STATEMENT OF FACTS[1]

Sirius XM is a satellite radio provider that broadcasts more than 150 channels of commercial-free music, plus sports, news, talk, entertainment, traffic and weather to more than 34 million subscribers. Affidavit of Catherine Petras in Support of Defendants' Motion to Compel Arbitration ("Petras Aff.") at ¶ 3; Affidavit of Elizabeth Ruhland in Support of Defendants' Motion to Compel

---

[1]    Citations to the Complaint are assumed to be true solely for purposes of this motion.

KL3 3266566.1

Arbitration ("Ruhland Aff.") at ¶ 3.[2]  Sirius XM offers subscriptions to its radio services, through, *inter alia,* radios installed in customers' vehicles, aftermarket portable radios and online streaming.  Petras Aff. ¶ 4; Ruhland Aff. ¶ 4.

As set forth more fully below, Plaintiff has been a Sirius XM subscriber at various times since 2005.  *See* Compl. ¶ 17; Petras Aff. ¶ 24; Ruhland Aff. ¶ 27-29.  This action relates to Plaintiff's account for his 2009 Jeep Grand Cherokee vehicle, for which he purchased a subscription in December 2017. Compl. ¶ 40.  As with all Sirius XM subscribers, Plaintiff's relationship with Sirius XM is governed by the terms of Sirius XM's Customer Agreement.  Petras Aff. ¶ 6; Ruhland Aff. ¶ 6.  The Customer Agreement which applied at the time of Plaintiff's purchase, and which remains in force today, contains a broad arbitration provision that refers to binding arbitration for "any legal or equitable claim relating to the Service, the Site, or [the subscriber's] Subscription or this Agreement."  Petras Aff. ¶ 34 and Exh. E § I.

---

[2]     The Court may consider the Affidavit on Sirius XM's motion to compel arbitration.  *See, e.g.*, *Raynor v. Verizon Wireless (VAW), LLC*, 2016 WL 1626020, at *1 n.1 (D.N.J. Apr. 25, 2016) (finding it proper to consider "affidavits and other evidence" in support of defendant's motion to compel arbitration).

I.    **Sirius XM Provided Plaintiff with Customer Agreements in Connection with His Satellite Radio Subscriptions**

Plaintiff has had multiple Sirius XM subscriptions over a nearly fifteen-year period. Ruhland Aff. ¶ 27-29. More specifically, Plaintiff received a trial subscription in 2009 with his purchase of a Jeep Grand Cherokee, and purchased a follow-on self-pay subscription for that vehicle thereafter under account number 104526511453 (the "1453 Account"). Petras Aff. ¶ 24; Ruhland Aff. ¶ 28. This is the account at issue in the present action. Plaintiff terminated his subscription on the 1453 Account in 2010, before subsequently purchasing a new subscription for his Jeep Grand Cherokee in December 2017. Ruhland Aff. ¶ 28. Plaintiff obtained another account for a trial subscription in August 2017 upon his purchase of a Toyota Highlander, under account number 434711625513 (the "5513 Account"). Ruhland Aff. ¶ 29. Plaintiff did not renew the subscription for the 5513 Account at the end of his three-month trial period. *Id.*[3]

Following Sirius XM's regular business practice, Sirius XM sent Plaintiff "Welcome Kits." Petras Aff. ¶ 8; Ruhland Aff. ¶ 8. Sirius XM contracts with a third-party vendor to send materials to subscribers through direct mail. Petras

---

[3]    Plaintiff purchased his two other subscriptions in 2005 for portable radios under account numbers 1-1574004180 (the "4180 Account") and 396936008 (the "6008 Account"). Petras Aff. ¶ 23; Ruhland Aff. ¶ 27. Plaintiff paid his bills regularly until terminating his subscription on the 6008 Account in 2008, and terminating his subscription on the 4180 Account in 2011. Petras Aff. ¶ 23; Ruhland Aff. ¶ 27.

Aff. ¶ 9; Ruhland Aff. ¶ 9.  Sirius XM and vendor records confirm that the vendor did mail a Welcome Kit to Plaintiff upon the opening of the 1453 Account and 5513 Account.  Petras Aff. ¶ 29 and Exhs. D and E; Ruhland Aff. ¶¶ 28-29 and Exhs. A, B, C, and D.  Each Welcome Kit contained, among other things, a copy of the Sirius XM Customer Agreement.  Petras Aff. Exh. E; Ruhland Aff. Exh. B and D.  These Customer Agreements are identical.  *See* Petras Aff. Exh. E; Ruhland Aff. Exh. D.

## II.   Plaintiff's Claims are Governed by the Sirius XM Customer Agreement

Plaintiff's claims in this action relate to the 1453 Account (for his Jeep Grand Cherokee).  As noted above, Plaintiff terminated his self-pay subscription on this account in 2010.  In or around December 2017, Sirius XM mailed to Plaintiff an offer to reactivate his service by purchasing a new subscription for the 1453 Account at a cost of $99 for three years (the "Offer").  Compl. ¶¶ 18-19.  The Offer expressly incorporates and is governed by the Customer Agreement.  The "**Offer Details**" at the bottom of the mailing directed Plaintiff to "**See our Customer Agreement for complete terms**."  Compl. Exh. A (emphasis added).

On December 8, 2017, Plaintiff contacted Sirius XM to purchase a new subscription for his Jeep Grand Cherokee.  Compl. ¶ 30; Petras Aff. ¶ 25.  The Sirius XM customer service representative ("CSR") was unable to apply the Offer to Plaintiff's account, but instead offered to Plaintiff a one-year subscription for $60.  Compl. ¶¶ 33-39; Petras Aff. ¶ 25.  In addition, Plaintiff was given a two-month trial

- 4 -

period before his credit card was charged and the one-year period began.  Petras Aff.

¶ 25.  Plaintiff accepted this offer.  Petras Aff. ¶ 25.  The CSR then reviewed the

transaction with Plaintiff, emphasizing that Plaintiff's relationship with Sirius XM

was governed by the Customer Agreement:

> Let's go over the details. The 12 months select plan you chose starts at
> the end of your trial on February 8, 2018. Your bill is $73.04 for the
> initial billing—for the initial period which includes fees and taxes. Any
> credit on your account at the time your plan is billed will be applied
> against your new charges. Your service will automatically renew on
> February 8, 2019. Your renewal will bill every month at the current rate
> for an estimated total charge of $19.46, which includes fees and taxes.
> You may cancel at any time by calling us at 866-635-2349. **Your
> customer agreement can be found on our website, Siriusxm.com,
> or you can request it at any time by phone**. If there's an email address
> on your account, the confirmation of this transaction will be sent to that
> email address within five days. **Do you accept these terms**, and may I
> have your permission to charge your card for $73.04 at the end of your
> trial on February 8, 2018 minus any credits on your account and for all
> future charges?

Petras Aff. ¶ 26 (emphasis added).  Plaintiff agreed to the terms and noted that he

still wanted to obtain the Offer.  Compl. ¶ 44; Petras Aff. ¶ 27.  A few hours after

this call, Parrella called to request Sirius XM's assistance in operating his radio.

Subsequently, in accordance with its regular practices, on December

28, 2017 Sirius XM mailed Parrella a self-pay Welcome Kit thanking him "for being

a loyal SiriusXM listener," and enclosing a copy of the Customer Agreement.  Petras

Aff. ¶ 29 and Exh. E.  Text at the bottom of the letter directed Plaintiff to "See our

Customer Agreement enclosed or online at www.siriusxm.com.  Please be sure to

read it." *Id.*  The same agreement was also readily available online on Sirius XM's website,  Petras Aff. ¶ 30 and Exh. F.

## III.    The Customer Agreement Contains a Broad Arbitration Clause

The Customer Agreement "applies to [each subscriber's] paid, trial or other subscription ("**Subscription**") in the Service Area . . . to the satellite radio service . . ., Internet radio service . . ., traffic, weather, and infotainment service, any Equipment Technology . . . relating thereto, and the web site ("**Site**") available to Subscribers and others at www.siriusxm.com." Petras Aff. ¶ 31 and Exh. E.  Further, the first column informs subscribers of the legally binding nature of the Customer Agreement, as well as the terms for repudiating the agreement:

> PLEASE READ THE TERMS OF THIS AGREEMENT CAREFULLY BEFORE ACCESSING OR USING THE SITE OR THE SERVICE. BY ACCESSING OR USING THE SITE OR THE SERVICE, YOU AGREE TO BE LEGALLY BOUND BY THIS AGREEMENT. PLEASE DO NOT USE THE SITE OR THE SERVICE IF YOU DO NOT AGREE WITH THIS AGREEMENT.
>
> IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SUBSCRIPTION. IF YOU DO NOT CANCEL YOUR SUBSCRIPTION WITHIN THREE BUSINESS DAYS OF THE START OF YOUR PLAN, IT WILL MEAN THAT YOU AGREE TO THIS AGREEMENT WHICH WILL BE LEGALLY BINDING ON YOU.

Petras Aff. ¶ 31 and Exh. E.

Part I of the Customer Agreement, titled "RESOLVING DISPUTES," provides that the parties must first attempt to resolve disputes informally, by

- 6 -

providing notice of a claim in writing.  Petras Aff. ¶ 32 and Exh. E § I.1.  To the

extent disputes between Sirius XM and subscribers cannot be resolved informally,

they must be arbitrated:

> **Formal Resolution:** If we cannot resolve a Claim informally, including
> any Claim between us, and any Claim by either of us against any agent,
> employee, successor, or assign of the other, including, to the full extent
> permitted by applicable law, third parties who are not party to this
> Agreement, whether related to this Agreement or otherwise, including
> past, present, and future Claims and disputes, and including any dispute
> as to the validity or applicability of this arbitration clause, then **these
> Claims shall be resolved, upon election by either party, exclusively
> and finally by binding arbitration**.

Petras Aff. ¶ 34 and Exh. E § I.2) (emphasis added).[4]

The broad arbitration provision applies to "any legal or equitable claim

relating to the Service, the Site, or [the subscriber's] Subscription or this

Agreement."  (Petras Aff. ¶ 33 and Exh. E § I).   The agreement also provides a

thorough explanation of the process and effects of arbitration, including waiver of

the right to a jury:

> PLEASE READ THIS PROVISION OF THIS SECTION
> CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE
> RESOLVED BY BINDING ARBITRATION. BY AGREEING TO
> ARBITRATION, YOU ARE HEREBY WAIVING THE RIGHT TO
> GO TO COURT, INCLUDING THE RIGHT TO A JURY. IN
> ARBITRATION, A DISPUTE IS RESOLVED BY AN
> ARBITRATOR, OR A PANEL OF ARBITRATORS, INSTEAD OF
> A JUDGE OR JURY. THE PARTIES UNDERSTAND THAT THEY

---

[4]     The Customer Agreement also provides for certain exceptions that are not
applicable here.  *See, e.g.*, Petras Aff. Exh. E § I.3-4.

WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, BUT THEY CHOOSE (BY THEIR ACCEPTANCE OF THIS AGREEMENT, IN ACCESSING OR USING THE SERVICE OR THE SITE) TO HAVE ANY DISPUTES RESOLVED THROUGH ARBITRATION.

(Petras Aff. ¶ 32 and Exh. E § I).

Further, the arbitration clause contains an explicit provision that all claims subject to arbitration under the agreement are to be arbitrated on an individual basis.   (Petras Aff. ¶ 36 and Exh. E § I.6).  Subscribers "do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim submitted to arbitration."  *Id.*

## IV.    Plaintiff Did Not Dispute the Customer Agreement, and Continued to Use Sirius XM's Service

As outlined above, the Customer Agreement provides that subscribers are legally bound to the terms of the Customer Agreement if they do not notify Sirius XM of their intent to cancel their subscriptions within three business days of the start of the plan.  (*See* above at 6).  Plaintiff did not contact Sirius XM within this time period—or at any other time before or after his twelve-month Select service subscription began on February 8, 2018—to cancel his subscription, or to discuss the Customer Agreement or his account in any way.  Petras Aff. ¶ 37.  Consequently, Sirius XM charged Plaintiff's credit card on February 8, 2018 for the twelve-month

subscription, as had been explained to Plaintiff by the CSR on December 8, 2017. Petras Aff. ¶ 38 and Exh. B.

Rather than seeking to cancel his subscription after his credit card was charged, Plaintiff continued to enjoy Sirius XM's service. On April 6, 2018, Plaintiff visited the Sirius XM website and registered the 1453 Account for online listening. Petras Aff. ¶ 39. By visiting the Sirius XM website, Planitiff had full and complete access to the applicable Customer Agreement containing the arbitration provision. *Id.*

On December 14, 2018, Sirius XM mailed Plaintiff an "Automatic Subscription Renewal Notice" for the 1453 Account, in accordance with the automatic renewal terms that were described to him by the CSR when he purchased his subscription in 2017. Petras Aff. ¶ 40 and Exhs. G and H. The notice informed Plaintiff that if he did not seek to cancel his subscription, it would renew on a monthly basis beginning February 8, 2019. Petras Aff. ¶ 40 and Exh. G. The notice further directed Plaintiff to "[p]lease see our Customer Agreement at www.siriusxm.com for complete terms, our refund policy, and how to cancel, which includes calling us at 1-855-837-5250." Petras Aff. ¶ 40 and Exh. G. Plaintiff did not cancel his account, and in fact continues to pay a monthly bill for the Sirius XM Select service to this day. Petras Aff. ¶ 41.

On June 19, 2019, Plaintiff filed the present action relating to his subscription, alleging that the subscription purchase for the 1453 Account on terms different than the Offer was unlawful.  Compl. ¶ 1. At no point did Plaintiff contact Sirius XM to informally resolve his claims.  Petras Aff. ¶ 42.

## <u>ARGUMENT</u>

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), governs the arbitration provision in the Customer Agreement.  *See* Petras Aff. Exh. E § I.2.[5]  The FAA reflects a "liberal federal policy favoring arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).  "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (citation omitted).

The FAA requires a court to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement.  *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  To determine whether there is a valid arbitration agreement, courts "apply ordinary state-law

---

[5]     Even if the parties had not expressly agreed to be governed by the FAA, the FAA would still control because it applies to agreements where, as here, the economic activity of one of the parties has a nexus to interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57-58 (2003).

principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under the FAA, parties may agree to arbitrate these gateway questions of arbitrability – that is, the arbitrator decides questions of whether the arbitration provision is valid and covers the dispute. *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S.Ct. 524, 529 (2019).

Here, as set forth below, both factors must be adjudicated by an arbitrator. And in any event, both factors are readily met here.

## I.     The Customer Agreement Unequivocally Delegates the Gateway Issues of Arbitrability to the Arbitrator

Under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Schein,* 139 S.Ct. at 529 (internal quotation marks and citations omitted). *See also First Options of Chi., Inc.*, 514 U.S. at 943 ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter.") (citations omitted).

Here, the Customer Agreement clearly and unmistakably provides that issues of arbitrability must be resolved by the arbitrator. The Customer Agreement states that "any claim between" Plaintiff and Sirius XM, "including any dispute as

to the validity or applicability of this arbitration clause, . . . shall be resolved, upon election by either party, exclusively and finally by binding arbitration." (Petras Aff. Exh. E § I.2) (emphasis added).[6]  Courts routinely refer gateway questions to arbitration based on such terms.  *See, e.g., Goffe v. Foulke Mgmt. Corp.*, 238 N.J. 191, 195-96, 198 (2019) (question of arbitrability delegated to arbitrator where agreement provided that arbitrator resolves "whether the claim or dispute must be arbitrated" and "the validity of this arbitration agreement"); *Beture v. Samsung Elec. Am., Inc.*, 2018 WL 4259845, at *9-10 (D.N.J. July 18, 2018) (parties to cellular phone service customer agreement delegated question of arbitrability to arbitrator where agreement stated "arbitrator shall decide all issues of interpretation and application of this arbitration provision and the [agreement].").

       Accordingly, for this reason alone, Sirius XM's motion to compel arbitration should be granted.

---

[6]    Similarly, it is the arbitrator's duty to determine whether "conditions precedent to an obligation to arbitrate have been met." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (citation omitted).  Here, as noted above at p. 10, Plaintiff never filed a notice of an informal complaint with Sirius XM, as he is required to do before seeking a formal resolution of his claims. *See* Petras Aff. Exh. E § I.1.  If the Court were to consider this issue, this failure alone is sufficient to warrant dismissal of the Complaint.

## II.    <u>The Gateway Issues Have Been Satisfied</u>

Even if the Court were inclined to find that it, rather than the arbitrator, should evaluate the gateway issues of arbitrability, Plaintiff's claims must be referred to arbitration.

### A.    There is a Valid Agreement to Arbitrate

A valid agreement to arbitrate exists where, as here, a customer is made aware of a customer agreement containing an arbitration clause and has a reasonable opportunity to review it, even if the agreement is not sent until *after* the parties conduct the transaction that is subject to the agreement. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (enforcing a forum selection clause in a cruise ticket that was sent to plaintiff after she purchased the ticket through a travel agent). *See also, e.g., Wright v. Sirius XM Radio Inc.*, 2017 WL 4676580, at *6 (C.D. Cal. Jun. 1, 2017) (enforcing Sirius XM Customer Agreement at issue here; "[the plaintiff] assented to the arbitration agreement because he initiated the relationship and continued to use his Sirius subscription after receiving the Customer Agreement"); *Kowalski v. YellowPages.com, LLC*, 2010 WL 3323749, at *5 (D.N.J. Aug. 18, 2010) (enforcing forum selection clause; "Plaintiff Winick received the Terms and Conditions after signing the Order Form.  She never rejected those Terms and Conditions, and her assent to the contract is confirmed by her payments to

Defendant for services rendered") *report and recommendation adopted*, 2010 WL 3810156 (D.N.J. Sept. 22, 2010).[7]

The Third Circuit's opinion in *Schwartz v. Comcast Corp.*, 256 F. App'x 515 (3d. Cir. 2007), is illustrative here. In *Schwartz*, the Third Circuit affirmed an order compelling arbitration pursuant to the arbitration provision of Comcast's customer agreement, a copy of which Comcast represented it sent to the plaintiff as part of a "welcome packet" after he became a subscriber. The court held that "Comcast's evidence of its consistent practice regarding delivery of subscription agreements and of the conduct of the parties in this case constitute prima facie evidence [which the plaintiff could not rebut] that Schwartz was aware that the services he accepted were being offered pursuant to a subscription agreement." *Id.* at 518. The court additionally held that "[w]hether or not Schwartz received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription agreement without becoming bound by that

---

[7]     *See also, e.g., Williams v. MetroPCS Wireless, Inc.*, 2010 WL 1645099, at *6 (S.D. Fla. Apr. 21, 2010) (finding parties had agreed to arbitrate where plaintiff continued to use service after being provided copy of Terms and Conditions); *Sherr v. Dell, Inc.*, 2006 WL 2109436 (S.D.N.Y. July 27, 2006) (enforcing arbitration agreement where plaintiff purchased computer over the phone, and agreement was mailed to plaintiff along with computer); *Hill v. Gateway 2000, Inc.*, 105 F. 3d 1147, 1149 (7th Cir. 1997) (same; "If the staff at the other end of the phone for direct-sales operations such as Gateway's had to read the four-page statement of terms before taking the buyer's credit card number, the droning voice would anesthetize rather than enlighten many potential buyers.").

KL3 3266566.1

agreement." *Id.* (citing Restatement (Second) of Contracts § 23 (1981)).  Schwartz's failure to read the contract terms was not a valid excuse, the court continued, because "the terms of the contract were available to Schwartz via the [Comcast] website." *Id.* at 520.

Federal courts applying New Jersey law regularly rely on *Schwartz* in compelling arbitration under similar circumstances.  For example, in *Tantillo v. CitiFinancial Retail Services, Inc.*, 2013 WL 622147 (D.N.J. Feb. 19, 2013), the court enforced an arbitration clause where the plaintiff signed an application for a line of credit which incorporated certain terms and conditions, even though the plaintiff was not provided with a copy of the referenced terms.  The Court concluded that the reference to the terms in the application was sufficient to provide "adequate notice of the existence of additional documents."  *Id.* at *9.  Further, the court found that, "[b]y using the line of credit, [the plaintiff] manifested assent and bound herself to the Arbitration Provision."  *Id.* (citing *Schwartz*, 256 F. App'x at 518).

Similarly, in *Beture v. Samsung Electronics America, Inc.*, 2018 WL 4259845 (D.N.J. July 18, 2018), plaintiffs argued that they lacked reasonable notice of an arbitration provision in the End User License Agreement ("EULA") for their Samsung smartphones because the EULA was displayed on the phone during initialization, a step which was often done for customers by carrier store employees.  The court rejected plaintiffs' arguments, concluding that "[e]ven when

a carrier store representative performed the Note 4 initialization, a smartphone user still has reasonable notice that use of the device is subject to terms and conditions. Where the user knew or should have known about such terms, the clickwrap agreement is enforceable." *Id.* at *6.

Likewise here, Sirius XM sent Parrella a hard copy of the Customer Agreement by mail after he purchased a subscription plan under the 1453 Account by phone. Supra pp. 5-6. Moreover, prior to purchasing a subscription under the 1453 Account, Parrella was informed by the CSR that his subscription would be governed by the Customer Agreement and that he could find it on the Sirius XM website or request a hard copy at any time. *Id.* at 5. Plaintiff orally acknowledged and agreed to these terms. *Id.* Furthermore, Plaintiff was no stranger to Sirius XM or the fact that his subscriptions with Sirius XM were governed by the Customer Agreement when he purchased a subscription in December 2017. On the contrary, over the course of several years he received physical copies of the Customer Agreement on multiple occasions. *Id.* at 3-4. Indeed, in September of 2017, only three months before the alleged misconduct here, Sirius XM mailed to him a copy of the Customer Agreement for the subscription included in his Toyota Highlander (the 5513 Account) that is identical to the one at issue here. *Id.* at 4.

Accordingly, a valid arbitration agreement exists either because (1) Sirius XM provided to Parrella a copy of the Customer Agreement and Parrella did

not cancel his subscription; or (2) Sirius XM made Parrella aware of the existence of—and Parrella verbally assented to—the Customer Agreement and he continued to accept Sirius XM services.

**B.    Plaintiff's Claims Fall Within the Scope of the Arbitration Clause**

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "The presumption in favor of arbitration guides district courts to refrain from denying a motion to compel arbitration absent certainty that the claims do not fall within the scope of an arbitration clause." *See Johnson v. Sally Beauty Supply, LLC*, 2016 WL 4771062, at *2 (D.N.J. Sept. 12, 2016); *Nascimento v. Anheuser-Busch Cos.*, 2016 WL 4472955, at *2 (D.N.J. Aug. 24, 2016) ("[A] motion to compel arbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

There can be no credible dispute that Plaintiff's claims, which relate to his subscription for his 1453 Account (supra p. 4), fall within the scope of the Customer Agreement's broad arbitration provision covering "any legal or equitable claim relating to the Service, the Site, or [Plaintiff's] Subscription or this

Agreement."   (Petras Aff. Exh. E § I).   Moreover, the Offer itself expressly incorporates the Customer Agreement.  Supra p. 4; Compl. Exh. A.

    Courts do not hesitate to compel arbitration under such circumstances. *See George v. Midland Funding, LLC*, 2019 WL 2591163, at *4 (D.N.J. June 25, 2019) (compelling arbitration where agreement "broadly incorporate[d] any claim related to the [a]greement"); *Cunningham v. Citigroup, Inc.*, 2005 WL 3454312, at *7 (D.N.J. Dec. 16, 2005) (arbitration provision covering "any" claim, including "anything related to" the underlying transaction and services was "unambiguous" and "broad enough to cover all of [p]laintiffs' claims" relating to Citibank's mishandling of personal data received by Citi as part of a loan transaction); *Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 266-67 (4th Cir. 2011) (contract language stating that "[a]ny dispute shall be submitted to binding arbitration" was "broad enough to encompass *all* agreements and *any* disputes, past and present, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded").

## III. <u>Plaintiff's Class Claims Cannot Proceed</u>

    The Customer Agreement's arbitration provision also provides that all claims must be arbitrated on an individual rather than class basis.  Petras Aff Exh. E § I.6).  The availability of class-wide arbitration is a "question of arbitrability," *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 332-35 (3d Cir. 2014), and should

KL3 3266566.1

therefore be left to the arbitrator to decide under the Customer Agreement.  However, if this Court were to decide the question, Plaintiff's waiver of his right to class-wide claims must be enforced.

In *AT&T Mobility LLC v. Concepcion*, the Supreme Court unequivocally held that class action waivers in agreements governed by the FAA must be enforced.  563 U.S. 333, 351-52 (2011).  *See also, e.g*., *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (same; "courts must 'rigorously enforce' arbitration agreements according to their terms") (citation omitted).  *Litman v. Cellco P'ship*, 655 F.3d 225, 230-31 (3d Cir. 2011) (compelling arbitration on individual basis where agreement contained explicit class action waiver).

Accordingly, Plaintiff cannot proceed with his class claims before this Court (or even in arbitration).

KL3 3266566.1

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to compel arbitration should be granted and the Court should therefore dismiss Plaintiff's class claims and order the parties to arbitrate Plaintiff's claims on an individual basis.

Dated:  September 13, 2019

Respectfully submitted,

By  */s/ Michael J. Gesualdo*
      Michael J. Gesualdo

ROBINSON MILLER LLC
Keith J. Miller (kmiller@rwmlegal.com)
Michael J. Gesualdo
(mgesualdo@rwmlegal.com)
Justin T. Quinn (jquinn@rwmlegal.com)
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
(973) 690-5400

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Mark Baghdassarian (*admitted pro hac vice*)
Aaron M. Frankel (*admitted pro hac vice*)
Eileen M. Patt (*admitted pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
mbaghdassarian@kramerlevin.com
afrankel@kramerlevin.com
epatt@kramerlevin.com

*Attorneys for Defendants Sirius XM
Holdings Inc., Sirius XM Radio Inc., and
James E. Meyer*

- 20 -

KL3 3266566.1