UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY PARRELLA, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SIRIUS XM HOLDINGS, INC. d/b/a SIRIUS XM SATELLITE RADIO, SIRIUS XM RADIO, INC., and JAMES E. MEYER, <br><br> Defendants. | Civ. No. 19-15778 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Remand filed by Plaintiff Jeffrey Parrella ("Plaintiff"). (ECF No. 10.) Defendants Sirius XM Holdings, Inc. d/b/a Sirius XM Satellite Radio ("Sirius XM Holdings"), Sirius XM Radio, Inc. ("Sirius XM"), and James E. Meyer (collectively, "Defendants") oppose. (ECF No. 22.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion is granted.

## BACKGROUND

This case arises from Defendant Sirius XM's alleged failure to honor an offer in an advertisement. Defendant Sirius XM transmits radio channels on a subscription fee basis. (Compl. ¶ 9, Ex. A, ECF No. 10-3.) In or around December 2017, Defendant Sirius XM sent

1

Plaintiff an advertisement offering to reactivate service on his deactivated account. (*Id.* ¶¶ 17–18.) Defendant Sirius XM offered to sell Plaintiff its "Select service" package at a cost of $99.00 per year, which would "lock in" three years of "uninterrupted Sirius XM Select service." (*Id.* ¶ 19.) The advertisement included a letter sent by Defendant James E. Meyer, CEO of Defendant Sirius XM Holdings. (*Id.* ¶¶ 22–23.) Plaintiff went online to accept the offer, only to find a "less attractive and more expensive offer" appear on screen: a "limited offer" of one year for $60.00. (*Id.* ¶¶ 24–27.) Plaintiff then called a customer service representative (the "CSR") at Defendant Sirius XM's office. (*Id.* ¶¶ 30–44.) Plaintiff accepted the "limited offer," but maintained that he wanted Defendant Sirius XM to honor the offer that he received in the mail. (*Id.* ¶ 40.)

Plaintiff is a resident of New Jersey. (*Id.* ¶ 3.) The other potential class members are also residents of New Jersey. (*Id.* ¶ 51.) Defendant Sirius XM Holdings and Defendant Sirius XM are incorporated in Delaware, with their headquarters in New York. (Opp'n at 14, ECF No. 22.) Defendant James E. Meyer is a resident of Indiana. (*Id.*)

Plaintiff initially filed this putative class action on June 19, 2019 in the Superior Court of New Jersey, Law Division, Mercer County. (Compl.) Plaintiff defines the class as:

> [a]ll New Jersey consumers to whom Sirius XM offered a "Select service" package the same as or similar to the "Select service" package offered to Plaintiff at any time on or after the day six years prior to the date this Complaint was filed, who timely responded to the offer and subsequently purchased a more expensive service package.

(*Id.* ¶ 51.) On behalf of this class, Plaintiff alleges four counts under New Jersey state law. (*Id.* ¶¶ 64–106.)

On July 24, 2019, Defendants timely removed to this Court. (Notice of Removal, ECF No. 1.) Defendants argue that this Court has jurisdiction over this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–15. (Notice of Removal ¶ 6.) On

2

August 23, 2019, Plaintiff moved to remand the case back to the Superior Court of New Jersey. (ECF No. 10.) This Motion is presently before the Court.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkoken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A defendant may remove a civil action filed in state court to the federal court embracing the place where the state action is pending. 28 U.S.C. § 1441(a). The defendant seeking to remove the matter bears the burden of showing that (1) federal subject-matter jurisdiction exists, (2) removal was timely, and (3) removal was proper. §§ 1441, 1446–47; *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). After a case has been removed, the district court must remand it to state court if subject-matter jurisdiction is lacking. § 1447(c).

Under CAFA, federal district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant; and (3) the class has at least 100 members. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (citing § 1332(d)(2), (5)(B), (6); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 133 S. Ct. 1345, 1347 (2013)). The party that removes the case bears the burden of establishing federal court jurisdiction. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006). To determine whether a court has jurisdiction under CAFA, "[the] court evaluates allegations in the complaint and a defendant's notice of removal." *Judon*, 773 F.3d at 500. Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*

3

*Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Thus, "a defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Id.* at 87 (citing 28 U.S.C. § 1446(a)). If the plaintiff contests the defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. "No antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.*

## DISCUSSION

### I. Motion to Remand

For this Court to exercise jurisdiction over this case under CAFA, the parties must be "minimally diverse." Minimal diversity requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The parties do not dispute that this case satisfies minimal diversity.

It is less apparent, on the face of Plaintiff's pleadings and Defendants' Notice of Removal, that this case satisfies CAFA's jurisdictional requirement that Plaintiff's proposed class have no fewer than 100 members. *See* § 1332(d)(5)(B). Plaintiff does not allege a specific class size in his state court Complaint. Instead, Plaintiff contends that this case can be brought as a class action because the "members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable." (Compl. ¶ 52.) Plaintiff bases this statement on the fact that Defendants engaged "in their transactions with numerous other consumers in New Jersey who are similarly situated to Plaintiff." (*Id.* ¶ 49.) Based on a "preliminary investigation," Defendants claimed in the Notice of Removal that Defendant Sirius

4

XM sent its advertisement for "Select service" to approximately 169,000 New Jersey residents. (Notice of Removal ¶ 14 (citing First Dunn Decl. ¶ 3, ECF No. 1-2).) Defendants now claim that, "[b]ased on [Defendant] Sirius XM's further investigation," approximately 201,250 New Jersey residents received the advertisement. (Opp'n at 11 (citing Second Dunn Decl. ¶ 3, ECF No. 22-1).) Defendants acknowledge that they have been unable to determine the exact number of customers who received the advertisement because of Plaintiff's "very broad definition of the class and the individualized nature of the investigation." (Second Dunn Decl. ¶ 4.)

Plaintiff's class definition, however, does not include every New Jersey resident to whom Defendant Sirius XM sent the advertisement, but only those who attempted to act upon the advertisement within a specific time period and subsequently purchased a more expensive package. (Compl. ¶ 51; Reply at 1, ECF No. 24.) With this class definition in mind, Defendants argue that "the potential number of all proposed plaintiff class members in the aggregate, based on Plaintiff's allegations, is not less than 100." (Notice of Removal ¶ 14.) But the only bases that Defendants have for asserting that the size of Plaintiff's class is greater than or equal to 100 are (a) Defendants' estimate of the number of people to whom Defendant Sirius XM initially sent the advertisement, (*see id*. ¶ 29; Second Dunn Decl. ¶ 3,) and (b) Plaintiff's assertions in the Complaint that the class size is large enough for this case to be brought as a class action, (*see* Opp'n at 5.)

Defendants' assertion that the amount in controversy exceeds $5,000,000—the third requirement for federal subject-matter jurisdiction under CAFA—stands on even less stable ground. To demonstrate that the amount-in-controversy requirement is satisfied, Defendants assess the size of the class by calculating the number of individuals who would need to be harmed—given Defendants' calculation of damages per individual—to reach an amount in

5

controversy of $5,000,000. Defendants calculate the damages per class member to be $1,434.85, accounting for Plaintiff's request for treble damages, plus attorneys' fees of twenty-five percent of damages. (Opp'n at 10–11.) Defendants then pose a hypothetical to the Court: "if there are at least 2,788 putative class members, the alleged damages . . . and potential attorney's fees . . . would exceed $5,000,000." (*Id.* at 11.) Based on the 2,788 figure, Defendants conclude that "if at least 1.4% of the customers who received the offer attempted to act on it, but were placed into a different offer, the amount in controversy would exceed the $5 million threshold." (*Id.*) Defendants attempt to support this guesswork by citing to cases that are not binding on this Court and arise in different contexts than the present case. (*Id*. at 11–13 (citing cases from the U.S. District Courts for the Central District of California and the District of Maryland).)

The Supreme Court has explained that "[i]n the event that the plaintiff . . . contest[s] the defendant's allegations [of the amount in controversy], both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. The burden rests on the removing party to prove that the jurisdictional amount-in-controversy threshold is met. *Judon*, 773 F.3d at 500; *Frederico*, 507 F.3d at 193. Defendants argue that because Plaintiff does not submit figures or estimates to the Court regarding the amount in controversy, Defendants have sufficiently pleaded that the amount-in-controversy requirement is satisfied. (Opp'n at 5.) Defendants point to language in *Dart Cherokee* explaining that, when the amount in controversy is contested, as here (Pl.'s Br. at 4–8, ECF No. 10-1), "both sides" submit proof for the Court's determination under the preponderance of evidence standard. (Opp'n at 6.)

However, it is unclear what evidence Defendants contend Plaintiff should submit that would be helpful to this Court in its assessment of the amount in controversy. The information

6

that is relevant to determining whether the amount in controversy is satisfied in this case is largely information related to the size of the class: how many people received Defendant Sirius XM's offer, how many people attempted to accept the offer, and how many people subsequently purchased a more expensive service package. This information is not within Plaintiff's possession or control. Moreover, the preponderance of the evidence standard does not ask which party has submitted more evidence regarding the amount in controversy, but whether the removing defendant has proven "to a reasonable probability that jurisdiction exists." *Judon*, 773 F.3d at 508 (citing *Frederico*, 507 F.3d at 195 n.6); *see also Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp. 2d 557, 562 (D.N.J. 2000) (placing the burden on the removing party to demonstrate that it is "more likely than not" that the amount in controversy is satisfied). Plaintiff's failure to submit figures involving the size of the class or additional proof regarding the damages suffered by each class member is not dispositive in this Court's application of the preponderance of the evidence standard.

Furthermore, the Third Circuit's opinion in *Judon* suggests that Defendants' estimate is not based on reasonable assumptions. In *Judon*, the plaintiff had alleged in state court that there were "hundreds of members" of the class. 773 F.3d at 498. The defendant asserted, given a minimum class size of 200 based on the plaintiff's complaint, that the value of each putative class member's damages "could amount to $20,000," *id.* at 499, but that "even if each class member recovered 'as little as $8,500,' CAFA's $5,000,000 jurisdictional threshold would be met," *id.* at 507 (citation omitted). The Third Circuit reasoned that the defendant was "drawing *inferences* from the limited papers the parties have submitted," and that the defendant "did not provide a principled reason to choose $8,500" as the appropriate amount for damages. *Id.* Reasoning that "estimate[s] of the amount recoverable should be 'objective and not based on

7

fanciful, "pie-in-the-sky," or simply wishful amounts,'" *id.* (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004)), the Court held that the defendant did not allege sufficient facts to establish by a preponderance of the evidence that the federal district court had jurisdiction over the case, *Judon*, 773 F.3d at 508.

In the case at bar, Defendants have not provided a persuasive reason to use a class size of 2,788 when calculating the amount in controversy. Without more information, it is unclear why it is plausible that the class size would be 1.4% of the people to whom Defendant Sirius XM initially sent its advertisement. The only reason that Defendants have for submitting that number is that it is the minimum class size that will confer CAFA jurisdiction upon this Court. Defendants, as the bearers of the burden of proof, have failed to demonstrate "to a reasonable probability that jurisdiction exists." *See Judon*, 773 F.3d at 508 (citation omitted); *see also Valerio v. Mustabasic*, 2007 WL 2769636, at *4 (D.N.J. Sept. 21, 2007) (citation omitted) ("[A] removing party must provide more than tenuous inferences and assumptions about the amount in controversy to satisfy its burden."). Accordingly, this Court is not persuaded that it has jurisdiction over this case under CAFA.

Defendants argue that, in addition to or as an alternative to CAFA jurisdiction, this Court has diversity jurisdiction. Diversity jurisdiction requires that "the matter in controversy exceed[ ] the sum or value of $75,000, exclusive of interest and costs, and [be] between . . . citizens of different States." 28 U.S.C. § 1332(a). Defendants' argument ignores well-settled Supreme Court and Third Circuit precedent regarding diversity jurisdiction in class action lawsuits. The amount-in-controversy requirement for diversity jurisdiction cannot be satisfied by aggregating the claims of class members in non-CAFA putative class actions. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1999) (citing *Snyder v. Harris*, 394 U.S. 332 *passim* (1969)). Each

8

plaintiff individually is required to seek at least the jurisdictional amount in controversy. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 148–49 (3d Cir. 2009). "Only claims, whether related or unrelated, of a single plaintiff against a single defendant may be aggregated." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (citing *Snyder*, 394 U.S. at 335). In their Opposition, Defendants calculate the alleged damages per class member as up to $1,434.85, including treble damages, plus attorneys' fees of twenty-five percent. (Opp'n at 10–11.) This amount is far below the requisite $75,000 per class member, rendering this Court without diversity jurisdiction over this case.

## II. Jurisdictional Discovery

This Court will not order the parties to engage in jurisdictional discovery in lieu of remanding the case. While this Court has occasionally ordered parties to engage in jurisdictional discovery where remand may be appropriate and where a defendant has not satisfied its burden, *see, e.g.*, *Canseven v. Just Pups, LLC*, 2015 WL 5455869, at *3 (D.N.J. Sept. 16, 2015); *Lee v. Cent. Parking Corp.*, 2015 WL 4510128, at *2 (D.N.J. July 24, 2015), a grant of jurisdictional discovery "should be made largely on the basis of readily available information," *Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 460 (D.N.J. 2007) (citation omitted); *see also Dicuio v. Brother Int'l Corp.*, 2011 WL 5557528, at *6 (D.N.J. Nov. 15, 2011) (citation omitted) ("For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members . . . in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified.").

Jurisdictional discovery in this case would require inquiries into the specific people who received Defendant's advertisement; inquiries into which of those people attempted to act on

Defendant Sirius XM's offer online, over the phone, or otherwise; and inquiries into which of those people were denied the original offer and purchased more expensive service packages. These inquiries are unlike those that led this Court to grant jurisdictional discovery in *Canseven* and *Lee*, both of which involved analysis of diversity of citizenship to assess the applicability of CAFA's exceptions. *See Canseven*, 2015 WL 5455869, at *3; *Lee*, 2015 WL 4510128, at *1–2. Defendants have already highlighted the protracted nature of their own attempt to answer the first of these questions. (*See* Second Dunn Decl. ¶ 4.) Consequently, the parties are not directed to conduct jurisdictional discovery at this time.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand is granted. An appropriate Order will follow.

Date: October 16, 2019  */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.